**UNITED STATES of America**

v.

**Andimo PAPPADIO, Defendant.**

United States District Court
S. D. New York.
Oct. 30, 1964.

Robert M. Morgenthau, U. S. Atty., William M. Tendy and Andrew M. Lawler, Jr., Asst. U. S. Attys., for the Government.

Lauritanó, Schlacter & Schneider, New York City, Jacob Kossman and Philip R. Edelbaum, New York City, of counsel, for defendant.

HERLANDS, District Judge.

The Court having considered the evidence and the documents finds as follows:

1. Notice of this hearing was given by an order to show cause signed by me on October 14, 1964, and served on Andimo Pappadio, the witness, and his counsel.

2. A grand jury was duly impaneled for this District in September 1963, and subsequently began an investigation into possible violations of the Federal Narcotic laws, which are referred to in Title 18, United States Code, Section 1406. The grand jury was engaged in this investigation on February 14, 1964, April 24, 1964, and May 8, 1964.

3. Andimo Pappadio, the witness, was duly subpoenaed to appear and testify before this grand jury by a valid subpoena dated February 3, 1964.

4. Pursuant to said subpoena, Andimo Pappadio, the witness, did appear and testify before the grand jury on February 14, April 24, and May 8, 1964.

5. On August 4, 1964, in the presence of Pappadio and the grand jury, oral and written application was made by the United States Attorney pursuant to the provisions of Title 18, United States Code, Section 1406, to have the aforesaid Pappadio instructed to testify.

The written application consisted of an affidavit of the United States Attorney and the written approval of the Attorney General.

This application was made to the Hon. Lloyd F. MacMahon, who, after considering the application, found that the United States Attorney had complied with the provisions of Title 18, United States Code, Section 1406, and was entitled to have the Court instruct the witness to testify and produce evidence before the grand jury.

Judge MacMahon explained to Andimo Pappadio, the witness, that full and absolute immunity from federal and state prosecution would be granted to him with respect to all matters concerning which he might be compelled to testify.

6. All steps were properly taken under the provisions of Title 18, United States Code, Section 1406, so that when Judge MacMahon ordered Pappadio to

answer the questions Pappadio was then absolutely immune from prosecution, and was not subject to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he might testify.

7. On August 4, 1964, Pappadio returned to the grand jury, but then and there refused to answer the questions.

8. On October 6, 1964, Andimo Pappadio again appeared before the same grand jury and refused to answer the questions.

9. On October 8, 1964, Andimo Pappadio was brought before me for an additional instruction. In the presence of Pappadio's attorney I again explained the immunity provisions of Title 18, United States Code, Section 1406. I again informed Pappadio that he had full and complete immunity as to any testimony which he gave before the grand jury, and then instructed Pappadio to return to the grand jury and give testimony.

10. On October 9, 1964, Pappadio appeared before the same grand jury. On this occasion Pappadio answered certain questions but refused to answer other questions on the basis of the First, Fifth and Sixth Amendments.

11. On October 13, 1964, Pappadio returned before the same grand jury. At this time he refused to answer the same questions which he had refused to answer on October 9, 1964.

Thereafter Pappadio was brought before me, and after hearing argument by his attorney, I ordered Pappadio to return to the grand jury and answer the questions which he had previously refused to answer.

That same afternoon Pappadio appeared before the grand jury and wilfully refused to answer the questions as directed by me.

12. Among the questions that the witness so refused to answer were the following questions which are the predicate of the present contempt proceeding:

"Q Mr. Pappadio, who are the attorneys who were present at these meetings?

"A I respectfully decline to answer on the grounds of the First, Fifth and Sixth Amendment.

"Q Aside from the meetings which you described, which took place in the street, where else did you meet with Lucchese?

"A I decline to answer under the First, the Fifth and the Sixth Amendment.

"Q Who else was present at these meetings besides yourself, Lucchese and the attorneys?

"A I respectfully decline to answer under the First, Fifth and Sixth Amendment.

\*      \*      \*      \*      \*

"Q All right; how many of such meetings were there?

"A I respectfully decline to answer on the ground of the First, the Fifth and Sixth Amendment.

\*      \*      \*      \*      \*

"Q Where did the meetings take place?

"A I respectfully decline under the First, the Fifth and the Sixth Amendment."

The aforesaid questions which Pappadio refused to answer on October 13, 1964, were material and pertinent to the grand jury investigation then being conducted. Pappadio's refusal to answer these questions obstructed and hindered the grand jury in its investigation.

13. During the hearing conducted before me on October 28 and October 30, 1964, the United States submitted evidence and full opportunity was given to the witness, Andimo Pappadio, to present evidence. During this hearing Pappadio was at all times represented by counsel.

14. The Court finds that the witness is guilty of a criminal contempt as charged.

Conclusions of law.

1. The Court concludes that the witness is guilty of a criminal contempt as charged.

2. Andimo Pappadio is adjudged guilty of criminal contempt for his wilful disobedience on October 13, 1964, of a lawful order of the Court. Andimo Pappadio, in refusing to answer questions before the grand jury on October 13, 1964, wilfully violated the order of Judge MacMahon of August 4, 1964, and my order of October 13, 1964.

3. The Court hereby fixes the punishment as two years. An order to that effect shall be entered forthwith in accordance with Rule 42(b) of the Federal Rules of Criminal Procedure.

The foregoing portion of my decision consists of numbered findings and conclusions. I should now like to discuss some of the points. This portion of my decision represents an expression of opinion with regard to only a few of the points. Those points that I regard as transparently without merit will not be discussed or adverted to.

It is incorrect to argue, as the witness now does, that the burden of proof would be upon him to show the affirmative fact that the Government has used or is using his testimony in a prosecution, including the prosecution of a now pending indictment against the witness. Should the Government try the witness under the pending indictment, the burden would be on the Government to prove, clearly and convincingly, that all of its proof is derived from sources completely independent of the witness's grand jury testimony, and any clues or leads derived from such testimony.

The burden would be upon the Government to establish the negative fact that none of its evidence is the fruit of the protected tree of the witness's immunized testimony. Such is the teaching of the cases on this point and in analogous situations. Murphy v. Waterfront Comm'n, 378 U.S. 52, 103, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (concurring opinion of Mr. Justice White); Lapides v. United States, 215 F.2d 253, 261 n. 10 (2d Cir. 1954) (dissenting opinion) (no disagreement as to this point); cf. United States v. Tane, 329 F.2d 848, 853 (2d Cir. 1964); United States v. Agueci, 310 F.2d 817, 834 (2d Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Paroutian, 299 F.2d 486, 489 (2d Cir. 1962); United States v. Coplon, 185 F. 2d 629, 636, 28 A.L.R.2d 1041 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S. Ct. 362, 96 L.Ed. 688 (1952).

The memorandum submitted in behalf of the witness in opposition to the order to show cause does not discuss a single question involved herein. Instead, it is a generalized argument that side-steps the specific matters posed.

Under Title 18 U.S.C. Section 1406, the immunity statute, the Government has the right to obtain truthful testimony from the witness. That is the objective of the provision that excludes the witness's perjury, if any, from the immunizing effect of the statute.

The immunity statute does not create an opportunity for a witness to effect an illusory exchange of real immunity in return for false testimony. There must be a bargain equivalent whereby the Government obtains the truth in exchange for its granting immunity.

That is the purpose of the concluding provisions in Section 1406, which read:

"But no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except prosecution described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

Virtually all immunity statutes contain the same or similar provisions with regard to perjury that may be committed by a witness.

The argument advanced in behalf of the witness with regard to a possible perjury prosecution, if accepted, would completely frustrate and nullify the purpose underlying the perjury provision contained in Section 1406 to which I have just alluded.

An order shall be entered in accordance with the directions of the Court hereinabove set forth. So ordered.