UNITED STATES of America, Appellee,

v.

John M. KEILLY, Defendant-Appellant.

No. 983, Docket 35818.

United States Court of Appeals, Second Circuit.

Argued May 27, 1971.

Decided July 26, 1971.

Stanley M. Meyer, Brooklyn, N. Y. (Marvin Preminger, Brooklyn, N. Y., on the brief), for appellant.

Walter M. Phillips, Jr., Asst. U. S. Atty., S.D.N.Y. (Whitney North Seymour, Jr., U. S. Atty., and Thomas J. Fitzpatrick, Asst. U. S. Atty., S.D.N.Y., on the brief), for appellee.

Before KAUFMAN, ANDERSON and MANSFIELD, Circuit Judges.

ANDERSON, Circuit Judge:

After a fourteen day jury trial, commencing on October 26, 1970, in the United States District Court for the Southern District of New York, John M. Keilly was convicted of offering a bribe to an employee of a union pension fund, in violation of 18 U.S.C. §§ 1952 and 1954, and of conspiring to violate those sections. Keilly was sentenced to 27 months imprisonment on each of two counts, to run concurrently and was fined a total of $6,000. We affirm.

The Government presented evidence, primarily the testimony of one Herbert Itkin, from which the jury could have found that Keilly agreed to pay David Wenger, an auditor of the Teamsters' Central States, Southeast and Southwest Area Pension Fund, some $5,000 in exchange for his efforts to persuade the Fund's trustees to increase the amount of financing the union fund would provide to a Michigan real estate developer. Specifically, Itkin testified that Leonard Ciaffone, a developer dissatisfied with the Fund's commitment to loan only $1,076,000 of the $1,250,000 for which he had applied, agreed in February, 1964 to pay mortgage brokers Keilly and Itkin $60,000 if they could obtain an increase in the amount the union was willing to lend. With Keilly's full collaboration and assistance, Itkin promised Wenger $5,000 of that commission if he could persuade the trustees to approve a $1,250,000 mortgage, which in time they did at his behest.

Testifying in his own behalf, Keilly admitted entering into a mortgage brokerage agreement with Ciaffone but stated that he had turned the matter over to Itkin. On direct examination he denied having met Wenger until February, 1966, approximately two years after the bribe was allegedly offered. The appellant admitted on cross-examination that during 1963 he had met John Townsend, an attorney then seeking construction loan financing for a hospital. But again appellant denied knowing Wenger until 1966. In rebuttal Townsend testified that Keilly had introduced Wenger to him in October, 1963, and, over defense objections, stated that Keilly at that time said that Wenger would

receive a portion of the commission which the hospital was to pay to Keilly and Itkin for processing its mortgage application.

■ After the alleged bribery but before his indictment by the federal grand jury on July 22, 1969, Keilly was, in 1967, subpoenaed to appear before a New York State grand jury and was granted immunity from prosecution so that he could be compelled to testify in the investigation of the activities of Herbert Itkin. N.Y.Code Crim.Proc. § 619–c, 66 McKinney's (1967). Appellant asserted that because the state prosecution of Herbert Itkin was removed to the federal court, under 28 U.S.C. § 1442, the federal authorities were bound by the state's grant of transactional immunity. Keilly's first point on appeal is that the trial court erred in denying his motion to dismiss the indictment, but the trial court properly denied the motion, for his position was erroneous in both fact and law. The appellant was never indicted in, nor was he subject to any state court prosecution which was removed to the federal court. He further fails to differentiate between his immunity from prosecution in the state court for any transaction about which he was compelled to testify, and the proscription against use of his grand jury testimony, or its fruits, in a federal forum. In Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964), the Court held "the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him." That decision did not bar—indeed, it explicitly contemplated—a federal prosecution arising out of the transactions about which a state witness might be compelled, under a

state's grant of immunity, to testify. United States v. Marcello, 423 F.2d 993 (5 Cir.), cert. denied 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970).

■ On direct examination appellant explained that his business records and accounts had been in the possession of the Manhattan District Attorney's office from 1967 until January, 1970, when they were subpoenaed by the United States Attorney's office. On cross-examination of the appellant, the prosecution introduced a bank statement and certain checks drawn on Keilly's corporate account, all of which were concededly obtained from the Manhattan District Attorney, to demonstrate that Itkin had financed much of Keilly's business operations during the period of the alleged conspiracy. Appellant argues here that the Government did not prove that this evidence was derived from sources independent of his state grand jury testimony. Murphy v. Waterfront Commission of New York Harbor, *supra*, 378 U.S. at 79 n. 18, 84 S.Ct. 1594; United States v. Pappadio, 235 F.Supp. 887, 890 (S.D.N.Y.1964). But defense counsel expressly stated at the trial that there was no objection to the admission into evidence of a great part of the documents, several of which had been put in evidence by Keilly in his own case, and objections to the remainder were on entirely different grounds. Keilly's claim is not available on appeal unless that admission was plain error. Rule 52(b), F.R.Crim.P.; United States v. Indiviglio, 352 F.2d 276 (2 Cir.) (*en banc*), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1967). The defense's statement at the trial that there was no objection to the admission into evidence of the checks and bank statements implied that these documents were not the product of the accused's testimony before the state grand jury, following his state granted immunity, but derived from another source, which the Government claims was the truth of the matter.[1] While the

---

1. In its brief the Government asserts that, if timely objection had been made, it could have proven that these records were subpoenaed by the Manhattan District Attorney before any grant of immunity was conferred upon Keilly, and that they were not a part of the immunity "compelled testimony and its fruits."

Government would have been better advised to have produced evidence of when the state district attorney got the documents, there was enough in the surrounding circumstances to indicate that the documents were not the product of the state grand jury inquiry which defined the area of Keilly's immunity or that Keilly had waived any claim of immunity, if they were. United States v. Marcello, *supra,* 423 F.2d at 1001.

■ The defendant's own use at the trial of many of the documents and his testimony regarding them support the foregoing conclusions. Appellant stated on direct examination that Itkin paid a portion of his business expenses and introduced an invoice from an Arizona hotel together with his check, payable to that hotel, to corroborate his alibi that he remained in Arizona for much of the time during which the bribery was alleged to have occurred. The bank statements and additional checks introduced by the prosecution merely documented Keilly's concession that, without Itkin's reimbursements, he did not have sufficient funds in his checking account to meet his travel and other business expenses. Under these circumstances we cannot say that the trial court's failure to exclude this documentary evidence on its own motion constituted plain error.

■ Appellant also asserts that the district court erroneously denied his motion to postpone his trial until after disposition of the perjury indictment pending against Herbert Itkin. The granting of such a continuance is, however, a matter within the discretion of the trial court whose decision will be overturned only upon a showing that the judge acted arbitrarily and substantially impaired the defendant's ability to defend himself. United States v. Ellenbogen, 365 F.2d 982, 985 (2 Cir. 1966), cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967). Although, if obtained, a perjury conviction against the Government's principal witness might have strengthened appellant's case, we are not persuaded that denial of this continuance substantially impaired Keilly's defense. At the time appellant filed his motion it was unlikely that Itkin would come to trial for many months. Moreover, the facts of this case occurred six years before the date on which appellant was to be tried; further delay would have been in derogation of the public's right to the expeditious disposition of criminal prosecutions and would have prejudiced the right to a speedy trial of Keilly's co-defendants, who did not join in his motion for a postponement. See United States v. Corrado, 307 F.Supp. 513 (S.D.N.Y.1969).

■ Appellant's final claim is that the district court committed prejudicial error in admitting rebuttal testimony that tended to show similar prior criminal activity by the appellant for which he had not been convicted or charged in the indictment. The rule of this circuit is the inclusory form which holds that evidence of other crimes is admissible except when offered solely to prove criminal character. United States v. Bradwell, 388 F.2d 619, 622 (2 Cir.), cert. denied 393 U.S. 867, 89 S.Ct. 152, 21 L. Ed.2d 135 (1968); United States v. Gardin, 382 F.2d 601, 603–604 (2 Cir. 1967); United States v. Deaton, 381 F. 2d 114 (2 Cir. 1967); United States v. Bilotti, 380 F.2d 649, 653 (2 Cir.) cert. denied 389 U.S. 944, 88 S.Ct. 308, 19 L. Ed.2d 300 (1967); United States v. Knohl, 379 F.2d 427, 438–439 (2 Cir.), cert. denied 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); United States v. Jones, 374 F.2d 414, 419 (2 Cir. 1967); United States v. Bozza, 365 F.2d 206, 212–213 (2 Cir. 1966).

■ Townsend's testimony that the appellant in this case had transacted business with David Wenger in October, 1963 was admissible to rebut Keilly's testimony on direct examination that he did not meet Wenger until 1966 because this was highly material to contradict evidence of the defense, bearing on elements of the offense charged. The applicable rule is set forth in United

States v. Cuadrado, 413 F.2d 633, 635 (2 Cir. 1969):

> "Where a defendant in his direct testimony falsely states a specific fact, 'the prosecution will not be prevented from proving, either through cross-examination or by calling its own witnesses, that he lied *as to that fact.*' United States v. Beno, 324 F.2d 582, 588 (2d Cir. 1963); Walder v. United States, 347 U.S. 62, at 65, 74 S.Ct. 354, at 356, 98 L.Ed. 503 (1954): '[T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.'" [Citations omitted.]

In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Court held that this same rationale applied to admit evidence even though it was obtained in violation of the Fifth Amendment, where the defendant's prior self-incriminating statements to the police rebutted an affirmative assertion of fact in his direct testimony at trial.

In the present case, although Townsend's testimony tended to establish the commission of a separate offense, it was properly received. This rebuttal evidence went no further than was necessary to contradict appellant's direct testimony and enough of the attendant circumstances to permit the jury to understand the setting and the purpose of the meeting. Judge Pollack instructed the jury that Townsend's testimony could be considered only in passing on appellant's credibility and not as evidence of guilt. Harris v. New York, *supra* at 225, 91 S.Ct. 643; United States v. Cuadrado, *supra,* 413 F.2d at 635–636. Admission of other crimes evidence to contradict a specific fact testified to by a defense witness rests in the sound discretion of the trial court, United States v. Deaton, *supra,* 381 F.2d at 118 n. 3.

The appellant relies heavily on United States v. Glasser, 443 F.2d 994 (2 Cir. 1971), but *Glässer* did not reverse the rule of this Circuit as stated in *Cuadrado* and *Deaton* or overturn the holdings in a substantial line of similar cases.

The conviction in *Glasser* was affirmed and the holding should not be construed as a departure from the well established rule of the Circuit.

The judgment of conviction is affirmed.